## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

BILLY GINWRIGHT,

    Plaintiff,

    v.

                                 Civil Action No. TDC-16-0565

EXETER FINANCE CORP.,

    Defendant.

## MEMORANDUM OPINION

On February 26, 2016, Plaintiff Billy Ginwright filed this action against Defendant Exeter Finance Corporation ("Exeter") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (2012), and the Maryland Telephone Consumer Protection Act ("MTCPA"), Md. Code Ann., Com. Law §§ 14-3201 to -3202 (West 2013). On May 11, 2016, Exeter filed its Amended Answer and Counterclaim, alleging that Ginwright breached the contract that led Exeter to seek to collect a debt by telephone. Pending before the Court is Ginwright's Motion to Dismiss Exeter's Counterclaim. For the following reasons, the Motion is granted.

## BACKGROUND

In May 2013, Ginwright entered into a contract with BW Auto Outlet of Hanover, Maryland to finance the purchase of a vehicle. Within the contract, BW Auto Outlet assigned all of its rights under the contract to Exeter. In his Complaint, Ginwright alleges that in seeking to collect a debt under the contract, Exeter called Ginwright's cellular phone "hundreds of times" by means of an automatic dialing system. Compl. ¶¶ 22-23. Ginwright maintains that Exeter

made the calls for non-emergency purposes and without his prior express consent.  He also asserts that he repeatedly told Exeter to cease calling him, to no avail.  Rather, Exeter representatives told him that they would not stop calling his cellular phone, and that the calls would continue through the automatic dialing system.  As a result, with rare exceptions, Ginwright received three to seven calls from Exeter every day between December 4 and December 17, 2014; March 5 and April 29, 2015; and May 10 and June 5, 2015.

In its Counterclaim, Exeter alleges that Ginwright breached the original contract when he failed to make car payments, requiring Exeter to repossess the vehicle.  Exeter contends that, following the sale of the vehicle and the application of the sale proceeds to the full amount owed, Ginwright owed a remainder of $23,782.17 under the contract as of May 3, 2016.

## DISCUSSION

Ginwright is seeking dismissal of the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Ginwright asserts that Exeter has failed to assert any independent basis for jurisdiction over the counterclaim and that this Court may not exercise supplemental jurisdiction over the counterclaim because it is a permissive counterclaim.  Exeter counters that, since the enactment of 28 U.S.C. § 1367, a court may exercise supplemental jurisdiction over a permissive counterclaim, and that, in any event, its counterclaim is compulsory.

### I.    Legal Standard

It is the burden of the party asserting jurisdiction to show that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  Rule 12(b)(1) allows a party to move for dismissal when it believes that the claimant has failed to make that showing.  Fed. R. Civ. P. 12(b)(1).  When a plaintiff asserts that the facts alleged in a

counterclaim are not sufficient to establish subject matter jurisdiction, the allegations in the counterclaim are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the [counterclaim] alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

## II.     Supplemental Jurisdiction

In asserting its counterclaim, Exeter does not allege that the Court has federal question jurisdiction, *see* 28 U.S.C. § 1331 (2012), or diversity jurisdiction, *see* 28 U.S.C. § 1332. Rather, Exeter asserts that jurisdiction is proper under the supplemental jurisdiction statute, 28 U.S.C. § 1367. In determining whether a court has supplemental jurisdiction over a counterclaim, the United States Court of Appeals for the Fourth Circuit has traditionally distinguished between compulsory counterclaims, which must be stated by a defendant in its answer, and permissive counterclaims, which need not be. Fed. R. Civ. P. 13. The Fourth Circuit has held that, absent an independent basis of jurisdiction, a federal court has supplemental jurisdiction over a compulsory counterclaim but not a permissive counterclaim. *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988); *Whigham v. Beneficial Finance Co.*, 599 F.2d 1322 (4th Cir. 1979) ("A federal court has ancillary jurisdiction over compulsory counterclaims, but it cannot entertain permissive counterclaims unless they independently satisfy federal jurisdictional requirements.").

Exeter argues that the Fourth Circuit rule has been superseded by the 1990 enactment of the supplemental jurisdiction statute, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to" claims already within the court's jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Exeter contends that the "all other claims" language

3

encompasses counterclaims and that the "same case or controversy" language encompasses at least certain types of permissive counterclaims.

Several courts of appeals have agreed with this view and have interpreted § 1367 to permit the exercise of supplemental jurisdiction over "at least some permissive counterclaims." *Global NAPs, Inc. v. Verizon New England, Inc.*, 603 F.3d 71, 76, 87 (1st Cir. 2010) ("[Section] 1367 abolishes the conceptual framework underpinning the old compulsory-permissive counterclaim distinction."); *accord Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004); *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996). Within the Fourth Circuit, however, district courts have continued to follow the binding precedent of *Painter* and limit supplemental jurisdiction to compulsory counterclaims. *See, e.g., Williams v. Long*, 558 F. Supp. 2d 601, 603 & n.1 (D. Md. 2008); *Harrison v. Grass*, 304 F. Supp. 2d 710, 712-13 (D. Md. 2004); *see also Sigala v. ABR of VA, Inc.*, No. GJH-15-1779, 2016 WL 1643759, at *2 (D. Md. Apr. 21, 2016); *Mann v. Fredericktown Assocs.*, No. WDQ-14-2971, 2015 WL 4878661, at *3 (D. Md. Aug. 13, 2015) (citing *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988)); *Moore v. Koch*, No. WMN-15-620, 2015 WL 4485465, at *3 (D. Md. July 21, 2015) (reaffirming the Fourth Circuit rule even though "appellate courts in several other circuits have held that supplemental jurisdiction under § 1367 may extend to permissive counterclaims in some circumstances"); *Ramirez v. Amazing Home Contractors, Inc.*, No. JKB-14-2168, 2014 WL 6845555, at *5 (D. Md. Nov. 25, 2014) ("[F]ederal courts may not exercise supplemental jurisdiction over permissive counterclaims. This remains the law in the Fourth Circuit."); *O'Fay v. Sessoms & Rogers, P.A.*, No. 5:08-CV-615-D, 2010 WL 9478988, at *5-6 (E.D.N.C. Feb. 9, 2010) (finding that the court lacked supplemental jurisdiction over the defendants' permissive

debt collection counterclaim in a Fair Debt Collection Practices Act action "absent further clarification from the Fourth Circuit").

In *Williams*, the court offered a rationale for the continuing applicability of the Fourth Circuit rule based on the premise that § 1367 did not materially alter the jurisdictional landscape applicable to this issue. The United States Supreme Court has stated that § 1367 "codified" existing common law doctrines of pendent and ancillary jurisdiction "under a common heading" of supplemental jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). The pre-§ 1367 doctrine of pendent jurisdiction provided federal jurisdiction over claims that "derive from a common nucleus of operative fact" such that "the entire action before the court comprises but one constitutional 'case.'" *Id.* at 164-65 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). In *International College of Surgeons*, when the Court applied the "common nucleus of operative fact" test to conclude that there was supplemental jurisdiction under the "same case or controversy" requirement of § 1367, it effectively equated the two tests. *See id.* at 165. In *Williams*, the court concluded that because the "common nucleus of operative fact" standard remains applicable after § 1367, the Fourth Circuit rule of providing supplemental jurisdiction over compulsory counterclaims only, which was premised on that pre-§ 1367 standard, remains intact. *Williams*, 558 F. Supp. 2d at 603 n.1 (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)). Where the Fourth Circuit has not addressed whether § 1367 altered the rule articulated in *Whigham* and *Painter*, the district courts within this circuit continue to adhere to that rule, and a principled basis exists for doing so, the Court declines to deviate from Fourth Circuit precedent and will continue to apply the rule that a federal court has supplemental jurisdiction over compulsory counterclaims only.

## III.   Permissive Counterclaim

In assessing whether a counterclaim is compulsory or permissive, courts consider four inquiries:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same?
> (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule?
> (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and
> (4) Is there any logical relationship between the claim and counterclaim?

*Painter*, 863 F.2d at 331. These inquiries are more akin to a set of guidelines than a rigid test, such that a "court need not answer all these questions in the affirmative for the counterclaim to be compulsory." *Id.*

Applying the four inquiries here, the Court concludes that Exeter's counterclaim is permissive. First, the issues of fact and law raised in the TCPA claim and breach of contract counterclaim are largely dissimilar. The TCPA bars "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to prevail on this claim, Ginwright must establish that Exeter made calls to the plaintiff's cellular phone, by means of an automatic dialing system, without Ginwright's express consent or an emergency purpose. *See Hossfeld v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 509 (D. Md. 2015). There is no requirement to show any underlying contractual dispute or debt that led to such phone calls. Meanwhile, the breach of contract counterclaim requires proof of an agreement between the parties and a failure by Ginwright to honor the terms of that agreement to make timely car payments. According to Ginwright, his defense may be based on the assertion that Exeter did

not comply with the statutorily required repossession and resale procedures contained in the Creditor Grantor Closed End Credit ("CLEC") provisions of the Maryland Commercial Law Article, which must be satisfied in order for a lender to collect a deficiency judgment for an unpaid car loan. *See* Md. Code. Ann., Com. Law § 12-1021 (West 2013).   There is no requirement to show any use or lack of use of telephone calls to the borrower.  Thus, there is little overlap between the two sets of legal and factual issues.

Second, because the legal and factual issues are different, the evidence would not be "substantially the same."  While the alleged contract underlying the counterclaim might be admissible on the TCPA claim to the extent that it is relevant to establishing prior express consent for phone calls or the lack thereof, the evidence on the TCPA claim will primarily consist of records and testimony about the number of calls received and the use of the automatic dialing system, which would be of no relevance to the breach of contract counterclaim. Likewise, Exeter's counterclaim, which contains no allegations relating to phone calls or an automatic dialing system, will rely primarily on evidence that does not pertain to the TCPA claim, such as proof of Ginwright's failure to make car payments and evidence that Exeter did or did not repossess the car and resell it in accordance with Maryland's CLEC requirements.

Third, *res judicata* would not bar a subsequent suit on the breach of contract counterclaim.   "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  An action is precluded when:

> 1.) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claim[ ] in the second matter [is] based upon the same cause of action involved in the earlier proceeding.

*Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003) (alteration in original) (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996)). Claims "based upon the same cause of action" are those which "arise out of the same transaction or series of transactions, or the same core of operative facts." *Id.* As discussed above, Exeter's counterclaim, which is associated with the sales agreement for a vehicle, derives from a different core set of facts than Ginwright's TCPA claim, which is based on numerous phone calls placed to his cellular phone from December 2014 to July 2015. Thus, *res judicata* would not bar a subsequent breach of contract claim by Exeter.

Fourth, any logical relationship between the TCPA claim and the breach of contract counterclaim is a loose one. Although the TCPA claim would likely not have arisen in the absence of the original contract at issue on the counterclaim, there is little or no connection between a claim concerning the misuse of an automatic dialing system and a counterclaim alleging the failure to pay back a loan. *Cf. Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981) (holding that a Fair Debt Collection Practices Act claim relating to the practices followed in collecting a debt and a counterclaim for collection of the debt itself "bear no logical relationship to one another").

Considering all of the factors, the Court concludes that Exeter's counterclaim is permissive. Although the Fourth Circuit has not addressed this precise issue, it has held that where a plaintiff alleged a violation of the disclosure requirements of the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667(f) (2012), a counterclaim seeking payment of the underlying debt was permissive. *Whigham*, 599 F.2d at 1323. In *Whigham*, the court concluded that the counterclaim raised "significantly different" issues of law and fact than those presented by the TILA claim and that evidence on the two claims differed because only the counterclaim

depended on verification of the debt and proof of default. *Id.* at 1324. It also concluded that the claims were "not logically related" because although the federal claim involved the same loan, it did not "arise from the obligations created by the contractual transaction." *Id.* at 1324. These same conclusions apply here, where Ginwright's TCPA claim involves different issues of fact and law, relies on different evidence, and is no more logically related to the counterclaim than the TILA claim in *Whigham* was to its counterclaim. *See id.*

The Court's conclusion is consistent with those of several district courts that have held that, in the case of a TCPA claim, a counterclaim alleging a failure to pay the debt that was the subject of the telephone calls was permissive. *See Vernell v. Nuvell Credit Co., LLC*, No. 2:15-cv-674-FtM-38MRM, 2016 WL 931104, at *3 (M.D. Fla. March 11, 2016); *Watkins v. Synchrony Bank*, No. 4:15–CV–00842, 2015 WL 5178134, at *3 (M.D. Pa. Sept. 4, 2015); *Dayhoff v. Wells Fargo Home Mortg., Inc.*, No. 6:13-CV-1132-ORL-37, 2014 WL 466151, at *2 (M.D. Fla. Feb. 5, 2014) (finding that the debt collection counterclaim in a TCPA action was a "permissive counterclaim at best"); *Hunt v. 21st Mortg. Corp.*, No. 2:12-CV-381-RDP, 2012 WL 3903783, at *3 (N.D. Ala. Sept. 7, 2012) (holding that a breach of contract counterclaim filed in response to a complaint alleging a TCPA violation and other claims was permissive); *Wilson v. Discover Bank*, No. 3:12-CV-05209-RBL, 2012 WL 1899539, at *2 (W.D. Wash. May 24, 2012); *see also Ramsey v. Gen. Motors Fin. Co.*, No. 3-15-0827, 2015 WL 6396000, at *2 (M.D. Tenn. Oct. 22, 2015) (holding that the TCPA claim and breach of contract counterclaim do "not arise from the same case or controversy").

Exeter's citation to a single district court case reaching the contrary conclusion, *Horton v. Calvary Portfolio Servs.*, 301 F.R.D. 547, 551 (S.D. Cal. July 23, 2014), is unpersuasive. In *Horton*, the court applied the "logical relationship" test, followed by the United States Court of

Appeals for the Ninth Circuit in determining whether a counterclaim is compulsory or permissive, which differs from the Fourth Circuit's four-part inquiry. *See id.* at 550. Moreover, other courts applying a logical relationship test have concluded that a breach of contract counterclaim to a TCPA claim is permissive. *See Wilson,* 2012 WL 1899539, at *2 (applying the same Ninth Circuit logical relationship test); *Watkins,* 2015 WL 5178134, at *3 (applying the logical relationship test of the United States Court of Appeals for the Third Circuit).

Having concluded that Exeter's counterclaim is permissive, the Court concludes that it must be dismissed for lack of jurisdiction. *See Painter,* 863 F.2d at 331; *Whigham,* 599 F.2d at 1323.

## IV.    28 U.S.C. § 1367(c)

Even if the Court could exercise supplemental jurisdiction over a permissive counterclaim, the Court may decline to do so under certain circumstances. 28 U.S.C. § 1367(c). Among those circumstances are where the "claim substantially predominates over the claims over which the court has original jurisdiction" and where, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* Here, the more fact-intensive breach of contract counterclaim, which may involve analysis of whether Exeter following state law requirements for repossession and resale, is likely to substantially predominate over the TCPA claim centered on whether Ginwright consented to receive telephone calls from Exeter on his cellular phone. *See Vernell,* 2016 WL 931104, at *3 ("[C]ourts in this district and elsewhere have found that a permissive breach of contract counterclaim will predominate over a TCPA claim."); *cf. Miller v. Interstate Auto Grp.,* No. 14–CV–116–SLC, 2014 WL 4437675, at *2-3 (W.D. Wis. Sept. 9, 2014) (declining to exercise jurisdiction over a breach of contract counterclaim after noting that it is more fact-intensive and "likely to involve more disputed

issues" than the plaintiff's claim of a violation of a federal consumer protection statute); *Campos v. W. Dental Servs.*, 404 F. Supp. 2d 1164, 1171 (N.D. Cal. 2005) (declining to exercise jurisdiction over a breach of contract counterclaim in a Fair Debt Collection Practices Act action in part because the "counterclaim may substantially predominate over the original federal claim").

Moreover, public policy concerns support declining jurisdiction. Federal consumer protection statutes seek to protect consumers from unscrupulous practices "regardless of whether a valid debt actually exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (discussing the purpose of the Fair Debt Collection Practices Act). In the context of TILA, the Fourth Circuit has cautioned that "[t]o let the lender use the federal proceedings as an opportunity to pursue private claims against the borrower would impede expeditious enforcement of the federal penalty and involve the district courts in debt collection matters having no federal significance." *Whigham*, 599 F.3d at 1324 (discussing TILA). This same concern applies here. Accordingly, having concluded that Exeter's counterclaim would substantially predominate over the TCPA claim, the Court, even if authorized to exercise supplemental jurisdiction over that counterclaim, would decline to do so.

## CONCLUSION

For the foregoing reasons, Ginwright's Motion to Dismiss Counterclaim is GRANTED. A separate Order shall issue.

Date:  October 6, 2016

THEODORE D. CHUANG
United States District Judge